ROGERS JOSEPH O'DONNELL
Dennis C. Huie (State Bar No. 184377)
dhuie@rjo.com
Sharon Ongerth Rossi (State Bar No. 232725)
srossi@rjo.com
Emily A. Murphy (State Bar No. 331315)
emurphy@rjo.com
Ruby Zapien (State Bar No. 342063)
rzapien@rjo.com
311 California Street, 10th Floor
San Francisco, California 94104
Telephone: 415.956.2828
Facsimile: 415.956.6457

Attorneys for Defendant
METRO SERVICES GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA E. RAMIREZ DE PORTILLO, individually and on behalf of others similarly situated,<br><br>                      Plaintiff,<br><br>        vs.<br><br>METRO SERVICES GROUP; and DOES 1 through 20 inclusive,<br><br>                      Defendant. | Case No.<br><br>[Removed from San Francisco Superior Court, Case No. CGC-23-606813]<br><br>**DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL** |

Defendant Metro Services Group ("Defendant") hereby removes this action from the Superior Court of the State of California for the County of San Francisco pursuant to 28 U.S.C. §§ 1332, 1446 and 1453 to the United States District Court for the Northern District of California. Defendant appears for the purpose of removal only, reserves all rights, claims and defenses of any nature whatsoever, and expressly denies that it is liable to the Plaintiff or to any members of the purported putative class, as defined in the operative complaint, for any damages or other relief. Defendant states as grounds for removal the following:

DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL – CASE NO.:

572366.5

1

**THE COMPLAINT**

2      1.      On April 19, 2021, an action was commenced with the Superior Court of the

3  State of California for the County of Los Angeles, entitled Claudia E. Ramirez De Portillo*,*

4  *individually and on behalf of others similarly situated v. Metro Services Group*, Case No.

5  21STCV14860 (hereinafter, the "Action").  Plaintiff filed the Action as a putative wage and

6  hour class action seeking to represent a putative class consisting of, "All *California citizens*

7  currently or formerly employed by Defendants as non-exempt employees in the State of

8  California at any time between October 23, 2016, and the date of class certification."

9      2.      A first amended complaint was filed on December 16, 2021, which added a

10  cause of action under the Private Attorney General Act of 2004, Labor Code § 2698 *et seq.*

11  (hereinafter, "PAGA") but left intact the definition of the putative class from the original

12  complaint which limited the class to *California citizens*.

13      3.      On May 23, 2022, Plaintiff filed a second amended complaint after the Court

14  granted Defendant's Motion for Summary Adjudication ("MSA").[1]  The SAC redefined the

15  putative class to exclude individuals who were bound by binding arbitration agreements but

16  otherwise kept the requirement that class members be *California citizens*.

17      4.      After the filing of the Second Amended Complaint, the parties stipulated to

18  transferring the Action to San Francisco Superior Court where the Action is currently

19  pending.

20      5.      On March 18, 2024, Plaintiff filed a Third Amended Complaint ("TAC"), the

21  operative complaint as of the date of this removal.  In the TAC, Plaintiff broadened the

22  definition of the putative class to:

23            All *persons* currently or formerly employed by Defendants as
            non-exempt employees in the State of California at any time
24            between October 23, 2016 and the date of class certification,
            excluding those who are covered under the Los Angeles /
25            Orange County Maintenance Contractors Agreement, the
            Southern California Maintenance Contractors Agreement, and
26

27  _____

28  [1] The MSA was granted on the ground that some putative class members, as defined under
the first amended complaint, are subject to binding arbitration agreements with class action
waivers and therefore, those individuals could not be included in the putative class.

_____
DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL – CASE NO.:

the Northern California Maintenance Contractors Agreements.

A true and correct copy of the TAC is attached as **Exhibit S** to the Appendix of State Court Pleadings In Support of Defendant's Notice of Removal ("Appendix" filed concurrently herewith). The Third Amended Complaint expanded the definition of the putative class by removing the restriction for class members to be *California citizens*. Thus, for the first time, non-California citizens could be included in the putative class.

6.      The TAC alleges nine causes of action against Defendant as follows:

      a.  Failure to Pay Minimum Wages, Cal. Labor Code §§ 223, 1194, 1194.2, 1197 & California Industrial Welfare Commission ("IWC") Wage Order § 3-4.

      b.  Failure to Pay Overtime Wages, Cal. Labor Code §§ 510, 1194, 1198, and IWC Wage Order § 3

      c.  Failure to Provide Meal Periods, Cal. Labor Code §§ 226.7, 512, and IWC Wage Order § 11.

      d.  Failure to Permit Rest Breaks, Cal. Labor Code § 226.7, and IWC Wage Order § 12.

      e.  Failure to Reimburse Business Expenses, Cal. Labor Code §§ 2800, 2802.

      f.  Failure to Provide Accurate Itemized Wage Statements, Cal. Labor Code §§ 226.

      g.  Failure to Pay All Wages Upon Separation of Employment, Cal. Labor Code §§ 201, 202, 203.

      h.  Violation of California Business and Professions Code § 17200 *et seq.*

      i.  Enforcement of Labor Code, Labor Code §§ 2698 *et seq.* ("PAGA")

Appendix Exh. S, TAC at ¶¶37-109.

## JURISDICTION

7.      The district court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA") because:

      a.      The putative class consists of at least 100 individuals.

1      b.    At least one member of the putative class is a citizen of a State or

2            foreign state that is different from the citizenship of Defendant, and

3      c.    The matter amount in controversy exceeds the sum or value of

4            $5,000,000, exclusive of interest and costs.

5      *See* 28 U.S.C. § 1332(d)(2), (d)(5).

6                              **CLASS ACTION**

7      8.    CAFA defines "class action" as "any civil action filed under rule 23 of the

8   Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure

9   authorizing an action to be brought by 1 or more representative persons as a class action."  28

10  U.S.C. § 1332(d)(1)(B).

11     9.    Plaintiff filed her Complaint under Section 382 of the California Code of Civil

12  Procedure (Appendix Exh. S, TAC at ¶ 18) which authorizes one or more individuals to sue

13  "for the benefit of all" when "the question is one of a common or general interest, of many

14  persons, or when the parties are numerous, and it is impracticable to bring them all before the

15  court."  Cal. Code Civ. Proc. § 382.  Accordingly, this action is a "class action" within the

16  meaning of CAFA.

17                  **MORE THAN 100 PUTATIVE CLASS MEMBERS**

18     10.   The Complaint alleges that the potential members of the class as defined in the

19  Complaint are so numerous that joinder of all members of the class is impracticable.

20  (Appendix Exh. S, TAC at ¶ 25(a)).

21     11.   During the period from October 26, 2016 to March 18, 2024, Defendant

22  employed more than 100 individuals who fall within the definition of the putative class.

23  Accordingly, the CAFA requirement of at least 100 represented persons is met.

24                              **DIVERSITY**

25     12.   Defendant Metro Services Group is a California corporation incorporated and

26  headquartered in California.  As Plaintiff alleges, Defendant is a citizen of California.

27  (Appendix Exh. S, TAC at ¶ 8.)

28     13.   Plaintiff alleges that she is a resident of California.  Appendix Exh. S, TAC at ¶

DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL – CASE NO.:

572366.5

10.   Defendant is informed and believes that Plaintiff is not a United States citizen.  As non-US citizens are not considered citizens of their state of residence, but rather are "citizen[s] or subject[s] of a foreign state" (28 U.S.C. §1332(d)(2)(B)) they are diverse for purposes of removal under CAFA.  *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Duran v. Fernandez Bros., Inc.*, 2015 WL 7012884, at *3 (N.D. Cal. Nov. 12, 2015).

14.   CAFA provides that a district court can exercise jurisdiction over a proposed class action as long as the number of proposed class members who are citizens of the same state as defendant does not exceed 2/3 of the proposed class.  28 U.S.C. §1332(d)(4)(A),(B).  Based on Defendant's records and the personnel records of the putative class, more than half the putative class members are not United States citizens and therefore not citizens of the State of California or of any State.

## THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

15.   This Court also has jurisdiction because the amount in controversy in this matter is greater than $5,000,000.  Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).  Defendant's amount in controversy allegation should be accepted unless it is challenged by the Plaintiff or the Court.  Defendant offers this estimated calculation for purposes of this notice of removal, based on the assumptions about the amount in controversy accepted by Ninth Circuit courts and described below, and these calculations do not reflect Defendant's admission of liability.[2]

16.   Where it is challenged, removal is proper where the Defendant establishes "by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold.  28 U.S.C. § 1446(c)(2)(B); *Dart Cherokee Basin Operative Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Id*. at 89.

---

[2] As indicated in footnote 4, *infra*, the metrics in connection with the estimated calculation are minimum numbers.  If removal is challenged, Defendant reserves the right to use updated numbers to establish the minimum amount of controversy is met.

"Removing defendants must inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove plaintiff's case for him by proving the actual rates of violation." *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017). Under the preponderance of the evidence standard, the Court must determine whether it is "'more likely than not'" that the amount in controversy exceeds $5,000,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *see also Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)("[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

17.    Plaintiff alleges that Defendant engaged in a systematic pattern of wage and hour violations under the California Labor Code and Industrial Welfare Commission Wage Orders. (Appendix Exh. S, TAC at ¶ 3.) Plaintiff incorporates this allegation of systematic pattern of wage and hour violations into every cause of action alleged in the complaint. (Appendix Exh. S, TAC at ¶¶ 3, 37, 44, 56, 65, 72, 80, 86, 92, 102.) Plaintiff seeks to recover compensatory damages, unpaid wages, unreimbursed expenses, benefits and penalties for a putative class consisting of all persons who were employed by Defendant as a non-exempt employee in California at any time between October 23, 2016, and the date of class certification. (Appendix Exh. S, TAC at ¶ 20, Prayer for Relief at ¶ 5.)

18.    The claims of individual class members are aggregated to determine if the amount in controversy exceeds $5,000,000. 28 U.S.C. §1332(d)(6). Congress intended for federal jurisdiction to be appropriate under CAFA, if the value of the matter in litigation exceeds $5,000,000 "'either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.,* damages, injunctive relief, or

572366.5

1    declaratory relief.)'" *Ripee*, 408 F. Supp. 2d at 984.

2        19.    Defendant's calculations of the amount in controversy are summarized in the

3    following table and explained in detail in the paragraphs that follow.[3]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

28    [3] All calculations supporting the amount-in-controversy assume, without any admission, the truth of the facts alleged by Plaintiff.

DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL – CASE NO.:

| Cause of Action | Alleged Recovery | Calculation of Amount in Controversy | Amount in Controversy |
|---|---|---|---|
| First Cause Of Action | Damages for Failure to Pay Minimum Wage,  Cal. Labor Code §§ 226, 226.6, 1194, 1194.2, 1197 & IWC Wage Order 5 | 10/26/2016 – 12/31/2016<br>2 violations per pay period  x 200 pay checks[4] x $10.00 per hour<br><br>1/1/17 – 12/31/17<br>2 violations per pay period  x 1,200 pay checks x $10.50 per hour<br><br>1/1/18 – 12/31/18<br>2 violations per pay period  x 2,400 pay checks x $11.00 per hour<br><br>1/1/19 – 12/31/19<br>2 violations per pay period  x 3,500 pay checks x $12.00 per hour<br><br>1/1/20 – 12/31/20<br>2 violations per pay period  x 4,000 pay checks x $13.00 per hour<br><br>1/1/21 – 12/31/21<br>2 violations per pay period  x 4,100 pay checks x $14.00 per hour<br><br>1/1/22 – 12/31/22<br>2 violations per pay period  x 4,300 pay checks x $15.00 per hour<br><br>1/1/23 – 12/31/23<br>2 violations per pay period  x 4,100 pay checks x $15.50 per hour<br><br>1/1/24 – 3/18/24<br>2 violations per pay period  x 450 pay checks x $16.00 per hour | $655,300.00 |

DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL – CASE NO.:

572366.5

| | | | |
|---|---|---|---|
| | Liquidated Damages for Unpaid Minimum Wage | 10/23/2017 – 3/18/24<br>2 violations per pay period x 23,000 pay checks x $10.50 average minimum wage per hour | $483,000.00 |
| Second Cause of Action | Failure to Pay Overtime Wages, Cal. Labor Code §§ 510, 1194, 1194.2, & IWC Wage Order 5 | 10/26/2016 – 12/31/2016<br>2 violations per pay period x 200 pay checks x $10.00 per hour *. 5 (OT premium)<br><br>1/1/17 – 12/31/17<br>2 violations per pay period x 1,200 pay checks x $10.50 per hour*. 5 (OT premium)<br><br>1/1/18 – 12/31/18<br>2 violations per pay period x 2,400 pay checks x $11.00 per hour*. 5 (OT premium)<br><br>1/1/19 – 12/31/19<br>2 violations per pay period x 3,500 pay checks x $12.00 per hour*. 5 (OT premium)<br><br>1/1/20 – 12/31/20<br>2 violations per pay period x 4,000 pay checks x $13.00 per hour*. 5 (OT premium)<br><br>1/1/21 – 12/31/21<br>2 violations per pay period x 4,100 pay checks x $14.00 per hour*. 5 (OT premium) | $327,650.00 |

[4] The metrics in this chart, such as the number of putative class members and number of paychecks,  represent the minimum quantity for the referenced period and is not intended to reflect an upper limit for the time period in question.

572366.5

| | | | |
|---|---|---|---|
| | | 1/1/22 – 12/31/22<br>2 violations per pay period  x 4,300 pay checks x $15.00 per hour*. 5 (OT premium)<br><br>1/1/23 – 12/31/23<br>2 violations per pay period  x 4,100 pay checks x $15.50 per hour*. 5 (OT premium)<br><br>1/1/24 – 3/18/24<br>2 violations per pay period  x 450 pay checks x $16.00 per hour*. 5 (OT premium) | |
| Third Cause of Action | Failure to Provide Meal Breaks, Cal. Labor Code § 226.7, & IWC Wage Order 5 | 10/26/2016 – 12/31/2016<br>2 violations per pay period  x 200 pay checks x $10.00 (one hour premium)<br><br>1/1/17 – 12/31/17<br>2 violations per pay period  x 1,200 pay checks x $10.50 (one hour premium)<br><br>1/1/18 – 12/31/18<br>2 violations per pay period  x 2,400 pay checks x $11.00 (one hour premium)<br><br>1/1/19 – 12/31/19<br>2 violations per pay period  x 3,500 pay checks x $12.00 (one hour premium)<br><br>1/1/20 – 12/31/20<br>2 violations per pay period  x 4,000 pay checks x $13.00 (one hour premium)<br><br>1/1/21 – 12/31/21<br>2 violations per pay period  x 4,100 pay checks x $14.00 | $655,300.00 |

572366.5

| | | | |
|---|---|---|---|
| | | (one hour premium) | |
| | | 1/1/22 – 12/31/22<br>2 violations per pay period  x 4,300 pay checks x $15.00 (one hour premium) | |
| | | 1/1/23 – 12/31/23<br>2 violations per pay period  x 4,100 pay checks x $15.50 (one hour premium) | |
| | | 1/1/24 – 3/18/24<br>2 violations per pay period  x 450 pay checks x $16.00 (one hour premium) | |
| Fourth Cause of Action | Failure to Provide Rest Periods, Cal. Labor Code §§ 226.7, 512, & IWC Wage Order 5 | 10/26/2016 – 12/31/2016<br>2 violations per pay period  x 200 pay checks x $10.00 (one hour premium) | $655,300.00 |
| | | 1/1/17 – 12/31/17<br>2 violations per pay period  x 1,200 pay checks x $10.50 (one hour premium) | |
| | | 1/1/18 – 12/31/18<br>2 violations per pay period  x 2,400 pay checks x $11.00 (one hour premium) | |
| | | 1/1/19 – 12/31/19<br>2 violations per pay period  x 3,500 pay checks x $12.00 (one hour premium) | |
| | | 1/1/20 – 12/31/20<br>2 violations per pay period  x 4,000 pay checks x $13.00 (one hour premium) | |
| | | 1/1/21 – 12/31/21<br>2 violations per pay period  x 4,100 pay checks x $14.00 | |

DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL – CASE NO.:

572366.5

| | | | |
|---|---|---|---|
| | | (one hour premium)<br><br>1/1/22 – 12/31/22<br>2 violations per pay period  x 4,300 pay checks x $15.00 (one hour premium)<br><br>1/1/23 – 12/31/23<br>2 violations per pay period  x 4,100 pay checks x $15.50 (one hour premium)<br><br>1/1/24 – 3/18/24<br>2 violations per pay period  x 450 pay checks x $16.00 (one hour premium) | |
| Fifth Cause of Action | Failure to Indemnify Employees for all Necessary Expenditures or Losses Incurred, Cal. Labor Code § 2802, & IWC Wage Order 5 | * Plaintiff does not provide adequate detail in the Complaint for Defendant to reasonably estimate damages for this cause of action. | - |
| Sixth Cause of Action | Failure to Comply with Itemized Employee Wage Statement Provisions, Cal. Labor Code §§ 226(B), 1174, 1175 | ($4,000.00 max penalty x 200 employees) + ($1,350.00 average penalty x 150 employees) | $1,002,500.00 |
| Seventh Cause of Action | Failure to Timely Pay Wages due at Termination, Cal. Labor Code §§ 201, 202, 203. | 10/23/2017 – 3/18/2024<br>225 separations x $78.85 average daily rate x 30 days | $532,271.25 |
| Eighth Cause of Action | Violation of California Unfair Competition Law, Cal. Business and Professions Code § 17200 *et seq* | The calculation of the amount in controversy is included in the above analysis for the first through fourth causes of action. | - |
| Subtotal for All Causes of Action | | | $4,311,321.25 |
| Attorneys' Fees | | | $1,077,830.31 |
| **Grand Total** | | | **$5,389,151.56** |

DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL – CASE NO.:

572366.5

**First Cause of Action**

**Failure to Pay Minimum Wage**

20.    Plaintiff alleges Defendant, "engaged in a systematic pattern of wage and hour violations." (Appendix Exh. S, TAC at ¶ 3.)  This allegation of systematic violations is incorporated into Plaintiff's First Cause of Action. (Appendix Exh. S, TAC at ¶ 37.) Plaintiff's First Cause of Action alleges that Defendant failed to pay, "all wages owed when Defendants did not pay for all hours worked including, but not limited, hours spent working off the clock, through meal periods while clocked out, and time worked but rounded in the employer's favor, among others." (Appendix Exh. S, TAC at ¶ 40.)  Plaintiff further alleges, "Defendant failed to pay at least minimum wage to Plaintiff and Class Members for all hours worked pursuant to Labor Code §§ 1194 and 1197." (Appendix Exh. S, TAC at ¶ 41.)

21.    Given the allegations that Defendant's purported violations are systematic, it is reasonable to assume at least one hour of off the clock time per putative class member per work week for purposes of calculating the amount in controversy. *See Soto v. Greif Packaging LLC*, 2018 WL 1224425, at *3 (C.D. Cal. March 8, 2018) (finding it "was reasonable and conservative to assume one hour of unpaid wages per employee per workweek" where the plaintiff alleged the defendant failed to pay class members for all hours worked on a "consistent and regular basis"); *Sanchez v. Capital Contractors Inc.*, 2014 WL 4773961 (N.D. Cal. Sep. 22, 2014) (reasonable to assume each class member not compensated for one-hour of overtime where complaint alleged each Labor Code violation identified in complaint occurred "systematically" and class members regularly worked overtime without pay); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5-*6 (N.D. Cal. March 1, 2012) (where a plaintiff alleges labor code violations occurred at "'all material times'" based on a "uniform policy and systematic scheme" it is reasonable to assume one violation per week for each alleged violation); *Wilson v. Best Buy Co., Inc.*, 2011 WL 445848, at *2 (E.D. Cal., Feb. 8, 2011) (same, based on allegations of unpaid overtime "'[d]uring the relevant time period'"); *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *4 (C.D. Cal. Feb. 5, 2018) (same based on allegations of unpaid overtime;

1    *Mendoza v. National Vision, Inc.*, 2019 WL 2929745, at \*4-\*5 (N.D. Cal. July 8, 2019) (same

2    based on allegations of unpaid overtime).

3        22.    Because Plaintiff alleges an Unfair Competition claim pursuant to Business &

4    Professions Code § 17200 *et seq*., the applicable statute of limitations for the recovery of

5    alleged unpaid wages under Plaintiff's First Cause of Action is four years.  *See Cortez v.*

6    *Purolator Air Filtration Products Co.*, 23 Cal. 4th 163,179 (2000).  Plaintiff alleges that

7    tolling applies based on Cal. Rules of Court, Appendix i, Emergency Rule No. 9, which tolled

8    the statute of limitations between April 6, 2020, to October 1, 2020.  (Appendix Exh. S, TAC

9    at ¶ 20, fn. 1.)  Accordingly, the purported statutory time period for this cause of action

10   extends back to October 23, 2016 with the application of such tolling.  (Appendix Exh. S,

11   TAC at ¶ 20.)  However, Plaintiff's recovery for liquidated damages under Labor Code §

12   1194.2 is limited to the three year period prior to the filing of her complaint.  *See* Cal. Labor

13   Code Civ. Proc. § 1194.2.

14       23.    During the time period purportedly covered by the TAC,[5] the minimum wage

15   varied.  The minimum wage in California was $10.00 per hour from January 1, 2016 to

16   December 31, 2016; $10.50 from January 1, 2017 to December 31, 2017; $11.00 from

17   January 1, 2018 to December 31, 2018; $12.00 from January 1, 2019 to December 31, 2019;

18   $13.00 from January 1, 2020, to December 31, 2020; $14.00 from January 1, 2021, to

19   December 31, 2021; $15.00 from January 1, 2022 to December 31, 2022; $15.50 from

20   January 1, 2023, to December 31, 2023; $16.00 from January 1, 2024, to December 31, 2024.

21   See Cal. Labor Code § 1182.12 and IWC Wage Order #5-2001.

22       24.    Defendant employs a pay method such that there are 24 pay periods in each

23   calendar year, or 2 in each calendar month.  Between October 23, 2016, to March 18, 2024,

24   Defendant issued, *at minimum,* the following number of paychecks to members of the

25   putative class:

26       • Between October 23, 2016, to December 31, 2016, at least 200 pay checks

27

28

[5] The purported statute of limitations period starts October 23, 2016.

were issued;

- Between January 1, 2017 to December 31, 2017, at least 1,200 pay checks were issued;

- Between January 1, 2018 to December 31, 2018, at least 2,400 pay checks were issued;

- Between January 1, 2019 to December 31, 2019, at least 3,500 pay checks were issued;

- Between January 1, 2020 to December 31, 2020, at least 4,000 pay checks were issued;

- Between January 1, 2021 to December 31, 2021, at least 4,100 pay checks were issued;

- Between January 1, 2022 to December 31, 2022, at least 4,300 pay checks were issued; and

- Between January 1, 2023 to December 31, 2023, at least 4,100 pay checks were issued;

- Between January 1, 2024 to March 18, 2024, at least 450 pay checks were issued.

In total, Defendant employed at least 502 individuals who fall within the definition of the putative class and issued at least 24,250 pay checks to those employees.

25.    As such, the amount in controversy for Plaintiff's First Cause of Action, not including interest, is: $655,300.00 = Alleged Unpaid Minimum Wage dating back to October 23, 2016 (October 23, 2016 to December 31, 2016: 2 violations per pay period  x 200 pay checks x $10.00 per hour; January 1, 2017 to December 31, 2017: 2 violations per pay period x 1,200 pay checks x $10.50 per hour; January 1, 2018 to December 31, 2018: 2 violations per pay period  x 2,400 pay checks x $11.00 per hour; January 1, 2019 to December 31, 2019: 2 violations per pay period  x 3,500 pay checks x $12.00 per hour; January 1, 2020 to December 31, 2020: 2 violations per pay period  x 4,000 pay checks x $12.00 per hour); January 1, 2021 to December 31, 2021: 2 violations per pay period  x 4,100 pay checks x

572366.5

$13.00 per hour); January 1, 2022 to December 31, 2022: 2 violations per pay period  x 4,300 pay checks x $14.00 per hour); January 1, 2023 to December 31, 2023: 2 violations per pay period  x 4,100 pay checks x $15.00 per hour); January 1, 2024, to March 18, 2024: 2 violations per pay period x 450 pay checks x 16.00 per hour + Liquidated Damages of $483,000.00 (October 23, 2017 to present: 2 violations per pay period x 23,000 pay checks x $10.50 average minimum wage per hour during relevant period).

## Second Cause of Action

## Failure to Pay Overtime

26.    Plaintiff alleges Defendant, "engaged in a systematic pattern of wage and hour violations." (Appendix Exh. S, TAC at ¶ 3.)  This allegation of systematic violations is incorporated into Plaintiff's Second Cause of Action.  (Appendix Exh. S, TAC at ¶ 44.) Plaintiff's Second Cause of Action alleges that during the relevant time period, Plaintiff and Class Members were not paid all wages including overtime wages for all hours worked including, but not limited to requiring Plaintiff and Class members to work off-the-clock and through meal periods, rounding time punches in the employer's favor, and failing to compensate Plaintiff and Class Members for these hours  (Appendix Exh. S, TAC at ¶¶ 29, 52), and that the failure to pay Plaintiff and Class Members the unpaid balance of overtime compensation violates Labor Code §§ 510 and 1198.  (Appendix Exh. S, TAC at ¶ 54.)

27.    As a result of Plaintiff's Unfair Competition claim, the applicable statute of limitations for the recovery of alleged unpaid wages and overtime premiums under Plaintiff's Second Cause of Action is four years.  *See Cortez*, 23 Cal. 4th 163.  Plaintiff alleges that tolling applies based on Cal. Rules of Court, Appendix I, Emergency Rule No. 9, which tolled the statute of limitations between April 6, 2020, to October 1, 2020.  (TAC, ¶ 20, fn. 1). Accordingly, the purported statutory time period for this cause of action extends back to October 23, 2016 with the application of such tolling.  (TAC, ¶ 20)

28.    Between October 23, 2016, to March 18, 2024, Defendant issued, *at minimum,* the following number of paychecks to members of the putative class:

- •    Between October 23, 2016, to December 31, 2016, at least 200 pay checks

DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL – CASE NO.:

572366.5

were issued;

- Between January 1, 2017 to December 31, 2017, at least 1,200 pay checks were issued;

- Between January 1, 2018 to December 31, 2018, at least 2,400 pay checks were issued;

- Between January 1, 2019 to December 31, 2019, at least 3,500 pay checks were issued;

- Between January 1, 2020 to December 31, 2020, at least 4,000 pay checks were issued;

- Between January 1, 2021 to December 31, 2021, at least 4,100 pay checks were issued;

- Between January 1, 2022 to December 31, 2022, at least 4,300 pay checks were issued; and

- Between January 1, 2023 to December 31, 2023, at least 4,100 pay checks were issued;

- Between January 1, 2024 to March 18, 2024, at least 450 pay checks were issued.

In total, Defendant employed at least 502 individuals who fall within the definition of the putative class and issued at least 24,250 pay checks to those employees.

29.     It can be assumed that there was one violation per week for each putative class member for the purposes of determining the amount in controversy.  *See e.g. Mendoza*, 2019 WL 2929745, at *4-*5; *Mortley*, 2018 WL 708115, at *4; *Jasso*, 2012 WL 699465, at *5-*6; Sanchez, 2018 WL 4773961**,** at *2-* 3; Wilson., 2011 WL 445848, at *2; *Ray v. Wells Fargo Bank, NA*, 2011 WL 1790123, at *6–*7 (C.D. Cal., May 9, 2011) (assumption of one hour overtime per week proper where allegation was "consistent" overtime).  Similarly, it is fair to assume that the average allegedly unpaid overtime premium is .5 times the regular rate of pay.  The regular rate of pay is at least the state minimum wage.  For illustration purposes, the state minimum wage will be applied in this calculation.

572366.5

30.     Accordingly, the amount in controversy for Plaintiff's Second Cause of Action, not including interest, is: $327,650.00  = Alleged Unpaid Overtime dating back to October 23, 2016 (October 23, 2016 to December 31, 2016: 2 violations per pay period  x 200 pay checks x $10.00 per hour x .5 (overtime premium); January 1, 2017 to December 31, 2017: 2 violations per pay period  x 1,200 pay checks x $10.50 per hour x .5 (overtime premium); January 1, 2018 to December 31, 2018: 2 violations per pay period  x 2,400 pay checks x $11.00 per hour x .5 (overtime premium); January 1, 2019 to December 31, 2019: 2 violations per pay period  x 3,500 pay checks x $12.00 per hour x .5 (overtime premium); January 1, 2020 to December 31, 2020: 2 violations per pay period  x 4,000 pay checks x $12.00 per hour x .5 (overtime premium); January 1, 2021 to December 31, 2021: 2 violations per pay period  x 4,100 pay checks x $13.00 per hour x .5 (overtime premium); January 1, 2022 to December 31, 2022: 2 violations per pay period  x 4,300 pay checks x $14.00 per hour x .5 (overtime premium); January 1, 2023 to December 31, 2023: 2 violations per pay period  x 4,100 pay checks x $15.00 per hour x .5 (overtime premium); January 1, 2024, to March 18, 2024: 2 violations per pay period x 450 pay checks x 16.00 per hour x .5 (overtime premium).

## **Third Cause of Action**

## **Failure to Provide Meal Breaks or Compensation**

31.     Plaintiff alleges Defendant, "engaged in a systematic pattern of wage and hour violations." (Appendix Exh. S, TAC at ¶ 3.)  This allegation of systemic violations is incorporated into Plaintiff's Third Cause of Action.  (Appendix Exh. S, TAC at ¶ 56.) Plaintiff's Third Cause of Action for failure to provide meal periods alleges that, "During the relevant time period, Plaintiff and Class Members did not receive compliant meal periods for working more than five (5) hours and ten (10) hours per day  because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period." (Appendix Exh. S, TAC at ¶ 61.)  Plaintiff further alleges that, "Labor Code § 226.7(b) and section 11 of the applicable IWC Wage Order require and employer to pay an employee one (1) additional hour of pay at the employee's regular rate of compensation for each work day

DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL – CASE NO.:

1   that a compliant meal period is not provided" and that "At all relevant times, Defendants

2   failed to pay Plaintiff and Class Members meal period premiums for missed, late, and/or short

3   meal periods pursuant to Labor Code § 226.7(b) and section 11 of the applicable IWC Wage

4   Order."  (Appendix Exh. S, TAC at ¶¶ 62-63.)

5        32.    As a result of Plaintiff's Unfair Competition claim, the applicable statute of

6   limitations for Plaintiff's Third Cause of Action is four years.  *See Cortez*, 23 Cal. 4th 163.

7   Plaintiff alleges that tolling applies based on Cal. Rules of Court, Appendix i, Emergency

8   Rule No. 9, which tolled the statute of limitations between April 6, 2020, to October 1, 2020.

9   (Appendix Exh. S, TAC at ¶ 20, fn. 1.)  Accordingly, the purported statutory time period for

10  this cause of action extends back to October 23, 2016 with the application of such tolling.

11  (Appendix Exh. S, TAC at ¶ 20.)

12       33.    Courts have held that where plaintiffs allege missing breaks regularly and

13  systematically, it is reasonable to estimate one missed meal period per week for purposes of

14  determining the amount in controversy.  *See Garza v. Brinderson Constructors, Inc.*, 178 F.

15  Supp. 3d 906, 912 (N.D. Cal. 2016) (collecting cases); *see also Mendoza*, 2019 WL 2929745,

16  at *4 (finding assumption of one violation per week per class member for meal period

17  violation was reasonable where the plaintiff alleged the defendant regularly and repeatedly

18  failed to provide meal breaks); *Sanchez*, 2018 WL 4773961, at *2-* 3 (reasonable to assume

19  20% violation rate for meal periods where complaint alleges each Labor Code violations

20  occurred "systematically"); *Oda v. Gucci America, Inc.,* 2015 WL 93335, at *5 (C.D. Cal.

21  Jan. 7, 2015) ("policy or practice" language supports reasonable assumption of a 50%

22  violation rate for meal periods).

23       34.    Between October 23, 2016, to March 18, 2024, Defendant issued, *at minimum¸*

24  the following number of paychecks to members of the putative class:

25       •   Between October 23, 2016, to December 31, 2016, at least  200 pay checks

26            were issued;

27       •   Between January 1, 2017 to December 31, 2017,  at least 1,200 pay checks

28            were issued;

572366.5

- Between January 1, 2018 to December 31, 2018, at least 2,400 pay checks were issued;

- Between January 1, 2019 to December 31, 2019, at least 3,500 pay checks were issued;

- Between January 1, 2020 to December 31, 2020, at least 4,000 pay checks were issued;

- Between January 1, 2021 to December 31, 2021, at least 4,100 pay checks were issued;

- Between January 1, 2022 to December 31, 2022, at least 4,300 pay checks were issued; and

- Between January 1, 2023 to December 31, 2023, at least 4,100 pay checks were issued;

- Between January 1, 2024 to March 18, 2024, at least 450 pay checks were issued.

In total, Defendant employed at least 502 individuals who fall within the definition of the putative class and issued at least 24,250 pay checks to those employees.

35.     Assuming one missed meal period per week, the estimated amount in controversy for Plaintiff's Third Cause of Action is:. $655,300.00  = Alleged Meal Period Premiums dating back to October 23, 2016 (October 23, 2016 to December 31, 2016: 2 violations per pay period  x 200 pay checks x $10.00 per hour; January 1, 2017 to December 31, 2017: 2 violations per pay period  x 1,200 pay checks x $10.50 per hour; January 1, 2018 to December 31, 2018: 2 violations per pay period  x 2,400 pay checks x $11.00 per hour; January 1, 2019 to December 31, 2019: 2 violations per pay period  x 3,500 pay checks x $12.00 per hour; January 1, 2020 to December 31, 2020: 2 violations per pay period  x 4,000 pay checks x $12.00 per hour; January 1, 2021 to December 31, 2021: 2 violations per pay period  x 4,100 pay checks x $13.00 per hour; January 1, 2022 to December 31, 2022: 2 violations per pay period  x 4,300 pay checks x $14.00 per hour; January 1, 2023 to December 31, 2023: 2 violations per pay period  x 4,100 pay checks x $15.00 per hour;

572366.5

January 1, 2024, to March 18, 2024: 2 violations per pay period x 450 pay checks x 16.00 per hour.

**Fourth Cause of Action**

**Failure to Permit Rest Breaks**

36.     Plaintiff alleges Defendant, "engaged in a systematic pattern of wage and hour violations." (Appendix Exh. S, TAC at ¶ 3.)  This allegation is incorporated into Plaintiff's Fourth Cause of Action.  (Appendix Exh. S, TAC at ¶ 65.)  Plaintiff's Fourth Cause of Action alleges that "During the relevant time period, Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked, including working in excess of ten (10) hours in a day, because they were required to work through their rest periods and/or were not authorized to take their rest periods."  (Appendix Exh. S, TAC at ¶ 68.)  Plaintiff alleges that, "Labor Code § 226.7(b) and section 12 of the applicable IWC Wage Order requires an employer to pay an employee one (1) additional hour of pay at the employee's regular rate of compensation for each work day that a compliant rest period is not provided" and that, "At all relevant times, Defendants failed to pay Plaintiff and Class Members rest period premiums for missed, late, and/or interrupted rest periods pursuant to Labor Code § 226.7(b) and section 12 of the applicable IWC Wage Order."  (Appendix Exh. S, TAC at ¶¶ 69-70.)  Plaintiff further allege that, "As a result of Defendants' failure to pay Plaintiff and Class Members an additional hour of pay for each day a compliant rest period was not provided, Plaintiff and Class Members suffered and continue to suffer a loss of wages and compensation."  (Appendix Exh. S, TAC at ¶ 71.)

37.     As a result of Plaintiff's Unfair Competition claim, the applicable statute of limitations for Plaintiff's Fourth Cause of Action is four years.  *See Cortez*, 23 Cal. 4th 163. Plaintiff alleges that tolling applies based on Cal. Rules of Court, Appendix I, Emergency Rule No. 9, which tolled the statute of limitations between April 6, 2020, to October 1, 2020. (Appendix Exh. S, TAC at ¶ 20, fn. 1)  Accordingly, the purported statutory time period for this cause of action extends back to October 23, 2016 with the application of such tolling. (Appendix Exh. S, TAC at ¶ 20.)

572366.5

38. Courts have held that where plaintiffs allege missing breaks regularly and systematically, it is reasonable to estimate one missed rest break per week in determining the amount in controversy. *See Garza.*, 178 F. Supp. 3d at 912 (collecting cases); *see also Mendoza*, 2019 WL 2929745, at *4 (finding assumption of one violation per week per class member for rest period violation was reasonable where the plaintiff alleged the defendant regularly and repeatedly failed to provide rest breaks); *Sanchez*, 2018 WL 4773961, at *2-* 3 (reasonable to assume 20% violation rate for meal periods where complaint alleges each Labor Code violations occurred "systematically"); *Oda,* 2015 WL 93335, at *5 ("policy or practice" language supports reasonable assumption of a 50% violation rate for meal periods).

39. Assuming one missed rest period per week, the estimated amount in controversy for Plaintiff's Fourth Cause of Action is:. $655,300.00 = Alleged Rest Period Premiums dating back to October 23, 2016 (October 23, 2016 to December 31, 2016: 2 violations per pay period  x 200 pay checks x $10.00 per hour; January 1, 2017 to December 31, 2017: 2 violations per pay period  x 1,200 pay checks x $10.50 per hour; January 1, 2018 to December 31, 2018: 2 violations per pay period  x 2,400 pay checks x $11.00 per hour; January 1, 2019 to December 31, 2019: 2 violations per pay period  x 3,500 pay checks x $12.00 per hour; January 1, 2020 to December 31, 2020: 2 violations per pay period  x 4,000 pay checks x $12.00 per hour; January 1, 2021 to December 31, 2021: 2 violations per pay period  x 4,100 pay checks x $13.00 per hour; January 1, 2022 to December 31, 2022: 2 violations per pay period  x 4,300 pay checks x $14.00 per hour; January 1, 2023 to December 31, 2023: 2 violations per pay period  x 4,100 pay checks x $15.00 per hour; January 1, 2024, to March 18, 2024: 2 violations per pay period x 450 pay checks x 16.00 per hour.

### Fifth Cause of Action

### Failure to Indemnify for Expenditures or Losses

40. Plaintiff's Fifth Cause of Action alleges that "In violation of Labor Code §§ 2800 and 2802, Defendants failed to reimburse or indemnify Plaintiff and Class Members for their expenses due to Defendants' knowing and intentional failure to reimburse necessary

DEFENDANT METRO SERVICES GROUP'S NOTICE OF REMOVAL – CASE NO.:

572366.5

business expenditures in connection with Plaintiff's and Class Members' work and job duties." (Appendix Exh. S, TAC at ¶ 78.)  Plaintiff alleges, "In violation of the Labor Code and IWC Wage Orders, Plaintiff and the Class Members incurred necessary business expenses and loss, such as cell phones, but were not reimbursed nor indemnified … ." (Appendix Exh. S, TAC at ¶ 32.)

41.    Plaintiff has not alleged sufficient details for Defendant to reasonably estimate the costs of cell phones.  To the extent Plaintiffs make this information available, if necessary, Defendant will update the amount in controversy to reflect this amount.

**Sixth Cause of Action**

**Failure to Provide Accurate Itemized Wage Statements**

42.    Plaintiff's Sixth Cause of Action alleges that, "During the relevant time period, Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members.  The deficiencies include, among other things, the failure to correctly state the employer's name, the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiff and Class Members." (Appendix Exh. S, TAC at ¶ 82.)  Plaintiff further alleges that "Plaintiff and Class Members are entitled to recover from Defendants the greater of all actual damages cause by Defendants' failure to comply with Labor Code § 226(a) or fifty dollars ($50.00) for the initial pay period in which a violation occurred and one hundred dollars ($100.00) per employee for each violation in subsequent pay periods in an amount not exceeding four thousand dollars ($4,000.00) per employee, plus attorneys' fees and costs." (Appendix Exh. S, TAC at ¶ 84.)

43.    A one year statute of limitations applies to a claim for Labor Code § 226(e) penalties.  *See Elliot v. Spherion Pac. Work, LLC,* 572 F. Supp. 2d 1169, 1179 n.9 (C.D. Cal. 2008).  Plaintiff alleges that tolling applies based on Cal. Rules of Court, Appendix I, Emergency Rule No. 9, which tolled the statute of limitations between April 6, 2020, to October 1, 2020.  (Appendix Exh. S, TAC at ¶ 20, fn. 1).  Accordingly, the purported statutory time period for his cause of action extends back to October 23, 2019, with the

572366.5

1    application of such tolling.

2        44.    For purposes of establishing the amount in controversy in cases with similar

3    allegations, courts have assumed a 100% violation rate when it comes to itemized wage

4    statement claims.  *See, e.g.¸ Morgan v. Childtime Childcare, Inc.*, 2017 WL 5198160, at *4

5    (C.D. Cal. Nov. 10, 2017); *Altamirano v. Shaw Indus. Inc.*, 2013 WL 2950600, at *11-*12

6    (N.D. Cal. June 14, 2013); *Mortley*, 2018 WL 708115, at *5; *Mendoza*, 2019 WL 2929745, at

7    *5.  An assumed 100% violation rate for the itemized wage statement claim is further

8    supported by the fact the itemized wage statement claim is likely derivative of the other

9    claims (e.g., off-the-clock, rounding, meal and rest period claims) where the courts have

10    found it reasonable to assume those underlying violations were occurring at least once per

11    week for purpose of determining the amount in controversy.

12        45.    The estimated amount in controversy for this cause of action is as follows:

13    There were at least 200 employees at the $4,000 penalty cap.  There were at least 150

14    employees who were below the $4,000 cap, and averaged $1,350 in penalties.  The amount in

15    controversy can be calculated as follows:  ($4,000 penalty x 200 employees) + (average

16    $1,350 penalty x 150 employees) = $1,002,500.00.

17                        **Seventh Cause of Action**

18                    **Failure to Pay Wages Due at Termination**

19        46.    Plaintiff's Seventh Cause of Action alleges that "During the relevant time

20    period, Defendants willfully failed to timely pay the Waiting Time Subclass all of their

21    earned wages upon termination, including, but not limited to, proper minimum wage and

22    overtime compensation, meal period premiums, and rest period premiums either at the time of

23    discharge or within seventy-two (72) hours of their leaving Defendants' employ."  (Appendix

24    Exh. S, TAC at ¶ 88.)  Plaintiff further alleges, "Pursuant to Labor Code § 203, the Waiting

25    Time Subclass is entitled to recover from Defendants the statutory penalty, which is defined

26    as the Waiting Time Subclass members' regular daily wage at their regular hourly rate of pay

27    for each day they were not paid, up to a maximum of thirty (30) days."  (Appendix Exh. S,

28    TAC at ¶ 91.)

572366.5

47.     For purposes of establishing the amount in controversy for these penalties, courts have accepted a calculation multiplying the number of employees whose employment ended during the class period by the average rate of pay and average number of hours worked, for the 30 days established as the penalty period.  *See, e.g.*, *Soto*, 2018 WL 1224425, at *5; *Altamirano*, 2013 WL 2950600, at *12; *Mortley*, 2018 WL 708115, at *5; *Mendoza*, 2019 WL 2929745, at *6.

48.     A three year statute of limitations applies to causes of action under Labor Code § 203.  Cal. Labor Code § 203(b); *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389 (2010).  Plaintiff alleges that tolling applies based on Cal. Rules of Court, Appendix I, Emergency Rule No. 9, which tolled the statute of limitations between April 6, 2020, to October 1, 2020.  (Appendix Exh. S, TAC at ¶ 20, fn. 1.)  Accordingly, the purported statutory time period for this cause of action extends back to October 23, 2017, with the application of such tolling

49.     The specified penalty for each day that an employer fails to pay all outstanding wages owed to an employee is one day's wages, up to a maximum of 30 days.  Labor Code. § 203.  There are more than 225 individuals from the putative class who are separated employees during the statutory period.  The normal shift length is normally more than 7.5 hours.  Using the calculation above, the amount in controversy is as follows: (October 23, 2017 to March 18, 2024: 225 separations x 78.85 average daily rate [$10.50 average minimum wage during statutory period x  average 7.5 hour shift] x 30 days) = $532,271.25.

**Attorneys' Fees**

50.     Plaintiff's complaint also alleges that the putative class is entitled to recover attorneys' fees.  Requests for attorneys' fees may be taken into account when ascertaining the amount-in-controversy.  *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Mendoza*, 2019 WL 2929745, at *6 (holding that "25% of the aggregate amount in controversy provides a reasonable estimate of the potential attorneys' fees at issue.").

51.     Given the foregoing, it is reasonable that the amount in controversy for

572366.5

1    attorneys' fees is $1,077,830.31.

2          52.    While Defendant denies that Plaintiff or any putative class member is entitled

3    to recover any amount or the other relief sought, based on the foregoing assumptions, the

4    amount in controversy exceeds $5,389,151.56… well over the $5,000,000 threshold set forth

5    in 28 U.S.C. §1332(d)(2).

6                    **Plaintiff Cannot Show Any CAFA Exception Applies**

7          53.    Once CAFA's initial requirements have been satisfied, the burden of proving

8    one of CAFA's exceptions rests with the party asserting the exception.  *Serrano v. 180*

9    *Connect, Inc.*, 478 F.3d 1018, 1021-22 (9th Cir. 2007).  No exception applies here and as

10   such, this Court has jurisdiction.

11                              **Removal Is Timely**

12         54.    The Ninth Circuit has held that a defendant may remove the case outside of the

13   30 day deadline if the Complaint does not "reveal on its face that there was diversity of

14   citizenship or that there was sufficient amount in controversy to support jurisdiction under

15   CAFA." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013); s*ee*

16   *also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018).  The Ninth Circuit

17   has held that a corporate defendant is not required to complete its investigation within the 30

18   days listed in the statute, and may remove at a later date if information permitting removal

19   becomes available later.  *Kenny*, 881 F.3d at 791; *Roth*, 720 F.3d at 1125.

20         55.    The original complaint through the second amended complaint do not disclose

21   a basis for removal to federal court.  Indeed, those complaints were pled in a manner to avoid

22   CAFA jurisdiction by limiting the class definition to *California citizens* to avoid the minimal

23   diversity requirement under CAFA by excluding individuals who were not citizens of

24   California from the class.  The TAC fundamentally changed the class definition by removing

25   the *California citizen* requirement thus including, for the first time, non-citizens in the

26   putative class.  However, the TAC is still not apparent on its face that the case was

27   removable.  This has necessitated that Defendant carry out an examination of the putative

28   class members' citizenship and the estimated dollar amount of the amount in controversy to

1    determine whether CAFA jurisdiction exists.

2                    **Venue and Intra-district Assignment**

3            56.    Because the Complaint was filed and is currently pending in the Superior Court

4    of California for the County of San Francisco, the Northern District of California is the proper

5    venue for this action upon removal pursuant to 28 U.S.C. § 1441(a) and the San Francisco

6    Division is the proper intra- assignment for this action upon removal pursuant to Civil L.R. 3-

7    2(c).

8                            **Removal Procedure**

9            57.    Pursuant to 28 U.S.C. § 1446(a), copies of all process and pleadings filed in the

10   State Court action and served on Defendants are attached to the Appendix of State Court

11   Pleadings, filed concurrently herewith.

12           58.    Defendants will promptly serve written notice of the removal of this action

13   upon Plaintiff and will file such notice with the Clerk of the Superior Court of the State of

14   California, County of San Francisco as required by 28 U.S.C. § 1446(d).

15

16   Dated:  April 8, 2024                    ROGERS JOSEPH O'DONNELL

17

18                                           By: _____

19                                              DENNIS C. HUIE
                                                SHARON ONGERTH ROSSI
20                                              EMILY A. MURPHY
                                                RUBY ZAPIAN
21                                              Attorneys for Defendant
                                                METRO SERVICES GROUP

22

23

24

25

26

27

28

572366.5