1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        San Francisco Division

11   CLAUDIA RAMIREZ DE PORTILLO,          Case No. 24-cv-02118-LB

12               Plaintiff,

13          v.                             **ORDER GRANTING SUMMARY JUDGMENT**

14   METRO SERVICES GROUP,                 Re: ECF No. 25

15               Defendant.

16

17                            **INTRODUCTION**

18        In this putative class action, the plaintiff sued her employer, Metro Services Group, asserting

19   violations of the California Labor Code (claims one through seven), the California Business and

20   Professions Code (claim eight), and the Labor Code Private Attorneys General Act (PAGA)

21   (claim nine).[1] Metro moved for summary judgment, contending that the plaintiff's claims are

22   subject to a 2024 collective-bargaining agreement (CBA) that requires (1) arbitration of her

23   individual California Labor Code and PAGA claims, (2) dismissal of her derivative unfair-

24   competition claim, and (3) a stay of the representative part of her PAGA claim. The plaintiff

25   counters that the CBA does not apply because it is an unsigned draft, Metro is not a signatory, and

26

27   ────────────────
     [1] Third Am. Compl. (TAC), Ex. S to Notice of Removal – ECF No. 1-22 at 79–91 (¶¶ 37–109).
     Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-
28   generated page numbers at the top of documents.

United States District Court
Northern District of California

even if the CBA applies, the waiver is ineffective because it is not clear and unmistakable and does not apply retroactively.

The 2024 CBA applies to the plaintiff's claims. The court grants summary judgment, compels arbitration, and stays the representative part of the PAGA claim.

## STATEMENT

The plaintiff began working for Metro as a janitor in December 2016 (a position she holds today) and has been a member of the Service Employees International Union, Local 87, during her employment, which she designated as her sole bargaining agent.[2] Metro and Local 87 entered CBAs from August 1, 2016, through July 31, 2020, and August 1, 2020, through July 31, 2024.[3] The following sections describe the parties' litigation efforts and the 2024 CBA.

### 1. The Litigation

The plaintiff filed this action against Metro in April 2021 in the Los Angeles County Superior Court, alleging claims for failure to pay minimum wages, failure to pay overtime wages, failure to provide meal periods, failure to permit rest breaks, failure to reimburse business expenses, failure to provide accurate itemized wage statements, failure to pay all wages due upon separation of employment, and violation of California Business and Professions Code.[4] She filed her first amended complaint (FAC) in December 2021, adding a ninth cause of action under PAGA.[5] The FAC defined a putative class of "[a]ll California citizens currently or formerly employed by Defendant[] as non-exempt employees in the State of California at any time between October 23, 2016, and the date of class certification."[6]

---

[2] Nolan Decl. – ECF No. 25-1 at 2 (¶¶ 5–6); Authorization, Ex. A to *id.* – ECF No. 25-2 at 2.

[3] CBAs, Exs. C–D to Nolan Decl. – ECF No. 25-2 at 17–133.

[4] Compl., Ex. 2 to Notice of Removal – ECF No. 1-4 at 4–24.

[5] First Am. Compl. (FAC), Ex. 32 to *id.* – ECF No. 1-5 at 72–94.

[6] *Id.* at 75–76 (¶ 20).

United States District Court
Northern District of California

1    Metro filed its answer in January 2022.[7] In April 2022, Metro moved for summary judgment,

2    contending that a portion of the putative class (not including the plaintiff) were covered by

3    arbitration agreements and class action waivers in three CBAs (not at issue here), and the Los

4    Angeles County Superior Court granted the motion.[8]

5        The plaintiff filed her second amended complaint in May 2022, narrowing the putative class to

6    "[a]ll California citizens currently or formerly employed by Defendant[] as non-exempt employees

7    in the State of California at any time between October 23, 2016 and the date of class certification,

8    excluding those who are covered under the Los Angeles/Orange County Maintenance Contractors

9    Agreement, the Southern California Maintenance Contractors Agreement, and the Northern

10    California Maintenance Contractors Agreements."[9] In June 2022, the parties stipulated to transfer

11    the case to the San Francisco County Superior Court because the majority of the putative class

12    members were employed or resided in the Bay Area.[10]

13        The parties engaged in discovery. The plaintiff sent Metro interrogatories and requests for

14    production seeking class discovery, including the class list, the putative class members'

15    timekeeping and payroll records, the job titles of the putative class members, the total number of

16    putative class members, and employment policies that governed their employment.[11] Metro

17    responded in July 2022, listing sixteen different job titles worked by putative class members and

18    agreeing to produce responsive documents, including the class list subject to the mailing of a

19    *Belaire-West* notice.[12]

20        Metro stated in a October 2023 joint-case management statement that it "anticipate[d] filing a

21    motion for summary judgment or summary adjudication on causes of action that are barred by

22

23

24    ───────────────
     [7] Answer, Ex. 35 to Notice of Removal – ECF No. 1-6 at 5–11.

25    [8] Mot., Ex. 40 to *id.* – ECF No. 1-6 at 35–37; Order, Ex. 50 to *id.* – ECF No. 1-12 at 65–77.

26    [9] Second Am. Compl., Ex. 59 to *id.* – ECF No. 1-13 at 53–54 (¶ 20).

     [10] Stipulation, Ex. 52 to *id.* – ECF No. 1-13 at 5–7.

27    [11] Valle Decl. & Exs. 1–2 – ECF No. 26-3 at 2 (¶ 3), 6–19.

28    [12] Valle Decl. & Exs. 3–4 – ECF No. 26-3 at 2 (¶ 4), 21–37.

United States District Court
Northern District of California

virtue of the CBA that applies to the named plaintiff and the remaining putative class members."[13] The plaintiff sent additional discovery requests seeking information about class claims and any applicable collective bargaining agreement in November 2023, and Metro agreed to produce responsive documents but had not yet filed a motion for summary judgment.[14]

In early 2024, the parties finalized the *Belaire-West* notice and solicited Phoenix Class Action Administration Solutions to administer the notice. A disagreement arose regarding the scope of the class and how to classify non-exempt employees in California who were permanent residents (rather than California citizens).[15] The plaintiff filed a third amended complaint (TAC) in March 2024, amending the class definition to "[a]ll persons currently or formerly employed by Defendant[] as non-exempt employees in the State of California at any time between October 23, 2016 and the date of class certification, excluding those who are covered under the Los Angeles/Orange County Maintenance Contractors Agreement, the Southern California Maintenance Contractors Agreement, and the Northern California Maintenance Contractors Agreements."[16] Metro answered the TAC and then removed the case to this district in April 2024.[17]

In June and July 2024, the parties discussed and finalized the proposed briefing schedule for the plaintiff to file her motion for class certification. On August 1, 2024, Metro served responses to the plaintiff's requests for special interrogatories and requests for production seeking the class list, the putative class members' timekeeping and payroll records, the job titles of the putative class members, the total number of putative class members, and employment policies that governed their employment.[18]

In August 2024, Metro confirmed with Phoenix that it was ready to move forward with the mailing of the *Belaire-West* notice and revised it to reflect that this action was transferred to this

---

[13] Joint CMC Statement, Ex. F to Notice of Removal – ECF No. 1-22 at 2.

[14] Valle Decl. & Ex. 5 – ECF No. 26-3 at 2 (¶ 6), 39–45.

[15] Joint Status Conference Statement, Ex. N to Notice of Removal – ECF No. 1-22 at 45; Emails, Ex. 7 to Valle Decl. – ECF No. 26-3 at 169–78.

[16] TAC, Ex. S to Notice of Removal – ECF No. 1-22 at 74.

[17] Answer, Ex. T to *id.* – ECF No. 1-22 at 96–100.

[18] Valle Decl. & Exs. 8–9 – ECF No. 26-3 at 3 (¶ 9), 180–99.

United States District Court
Northern District of California

district. Metro then made further revisions to the *Belaire-West* notice, and Phoenix sent the notice to the putative class members on September 5, 2024.[19]

On September 9, 2024, Metro served over 300 pages of policy documents covering the plaintiff's employment and the putative class. On October 10, 2024, after the *Belaire-West* notice had been completed, Phoenix sent the plaintiff the class list. On November 11, 2024, Metro served 500 pages of policy documents and collective-bargaining agreements covering the plaintiff's employment and the putative class. None of the documents produced by Metro included the 2024 CBA. On December 4, 2024, Metro propounded a request for production of documents on the plaintiff and noticed her deposition for January 8, 2025.[20] Metro later rescinded the deposition and request for production.[21]

## 2.  The 2024 CBA

The latest CBA between Metro and Local 87 states the enforcement dates are from August 1, 2024, to July 31, 2028. It is unsigned and contains provisions that are highlighted, struck through, and red-lined.[22] Mark Nolan (vice president of janitorial for Metro) states that Metro and Local 87 "have been operating with a mutual understanding that the August 2024 CBA is effective and controlling" since September 18, 2024, even though it is unsigned.[23]

The 2024 CBA contains a grievance procedure including an arbitration provision:

> **20.1** Any difference between the Employer and the Union involving the meaning or application of the provisions of this Agreement shall constitute a grievance and shall be taken up in the manner set forth in this Section. Before filing a grievance in

---

[19] Valle Decl. & Ex. 10 – ECF No. 26-3 at 3 (¶ 11), 201.

[20] Valle Decl. & Exs. 12–13 – ECF No. 26-3 at 3–4 (¶¶ 12–15), 205–23.

[21] Huie Decl. – ECF No. 27-2 at 2 (¶¶ 4–5).

[22] 2024 CBA, Ex. E to Nolan Decl. – ECF No. 25-2 at 135–206; Mot. – ECF No. 25 at 10; Opp'n – ECF No. 26 at 12.

[23] Nolan Decl. – ECF 25-1 at 3 (¶ 8). The plaintiff objects to Mr. Nolan's declaration on grounds of hearsay, lack of foundation, and the best evidence rule. Evid. Obj. – ECF No. 26-2 at 2 (citing Fed. R. Evid. §§ 602, 802, 901, 1002). The court denies the objections. Affidavits may be used to support a motion for summary judgment, and Mr. Nolan's statements do not lack foundation. The plaintiff also should have included the objections in the brief rather than a separate attachment. Civil L.R. 7-3(a); Reply – ECF No. 27 at 8–9 (making these points).

United States District Court
Northern District of California

writing, a grievant and/or his representative may discuss the grievance with a representative of the other party to attempt to resolve the grievance informally.

. . . .

**20.5** STEP 3 Board of Adjustment with a Federal Mediator . . . In the event that the parties are unable to resolve the dispute at the first step meeting, the parties will set a date for a Board of Adjustment with a federal mediator . . . . Discovery that is provided at the Board of Adjustment does not preclude the union or company from providing additional documents at the informal meeting, mediation or arbitration hearing. If the matter is not resolved at the board of adjustment hearing either party may file a request for Grievance mediation within seven (7) calendar days of the Board of Adjustment hearing.

. . . .

**20.7** STEP 4 Federal Mediation The mediator shall meet with the parties including affected employee(s) to assist and offer advisory opinions in an effort to help the parties reach an agreement that resolves the grievance. If there is no decision then either party may advance the grievance to arbitration within twenty (20) days following the mediation[.]

**20.8** If the parties cannot agree upon a person to act as an impartial arbitrator within five (5) days after service of such demand, the parties will utilize the following arbitrators, who will be selected on a rotating basis[.]

. . . .

**20.9** The decision of the arbitrator shall be final and binding on both parties hereto. In the event of a willful failure by either party to appear before the Arbitrator, the Arbitrator is hereby authorized to render his decision upon the evidence produced by the party appearing.

**20.10** Each party shall bear all costs of presenting its case to the Arbitrator. The Arbitrator's fee and all incidental expenses of the arbitration shall be borne equally by the parties hereto.

**20.11** Proposals to add to or change this Agreement shall not be subject to arbitration. Neither an arbitrator nor a panel of representatives shall have any authority or power to add, alter or amend this Agreement.

**20.12** The arbitrator shall render a decision in writing within thirty (30) days if possible and in any event no later than sixty (60) days after the close of the hearing. It is understood that a hearing is not "closed" within the meaning of this provision until the post-hearing briefs are filed.[24]

The 2024 CBA also includes a savings clause:

If any provision of this Agreement or the application of such provision to any person or circumstances be ruled an "Unfair Labor Practice," or in any other way contrary to law, by any Federal or State Court or duly authorized agency, the remainder of

---

[24] 2024 CBA, Ex. E to Nolan Decl. – ECF No. 25-2 at 165–68 (§§ 20.1, 20.5, 20.7–.12).

United States District Court
Northern District of California

this Agreement or the application of such provisions to other persons or circumstances shall not be affected thereby.[25]

On September 20, 2024, Mr. Nolan received an email titled "Fw: PAGA Waiver – Immediate Attention." The email stated that the San Francisco Maintenance Contractors negotiated agreements with Local 87 and advised the "Me-Too Contractors" with employees covered by the contract to follow procedures described in the forwarded email. The forwarded memo stated:

> As a result of our negotiated agreement with SEIU Local 87 the parties agreed to incorporate a Letter of Understanding related to a PAGA Waiver (Private Attorneys General Act of 2004).
>
> This agreement requires disputes to be resolved through the Grievance Procedure of our Collective Bargaining Agreement and not through a court of law or before administrative agencies, such as the California Labor Commission.[26]

The email also attached a form letter notifying the California Labor and Workforce Development Agency of the PAGA waiver that contractors could complete by replacing "Company Name" with their own. Metro completed and sent the notice on September 25, 2025.[27]

Letter of understanding 4 (referenced in the above email) states:

> The parties agree that this Agreement provides for wages (Section 8), Hours of Work (Section 7) and Working Conditions (Section 5) of employees and provides premium wage for all overtime hours worked (Sections 7 and 8).
>
> The parties further agree that this Agreement requires the Employer to pay all nonprobationary workers working in certain worksites, total hourly compensation, inclusive of wages, health insurance, pension, training, vacation, holiday, and fringe benefit funds, amounting to not less than 30 percent more than the state minimum wage rate.
>
> It is mutually agreed that this Agreement prohibits any and all violations of the sections of the California Labor Code that are redressable pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA") Such claims shall be resolved exclusively through the procedures set forth in Section 20 – Grievance Procedure, and shall not be brought in a court of law or before any administrative agency such as the California Labor Commissioner. This Agreement expressly waives the requirements of PAGA as provided in Labor Code Section 2699.8 and authorizes the arbitrator to award any and all remedies otherwise available under the California Labor Code, except the award of penalties under PAGA that would be payable to the Labor and Workforce Development Agency.[28]

---

[25] *Id.* at 168 (§ 21.1).

[26] Email, Ex. B to Nolan Decl. – ECF No. 27-1 at 63–64.

[27] Nolan Decl. – ECF No. 25-1 at 3–4 (¶ 10); Letter, Ex. F to *id.* – ECF No. 25-2 at 208.

[28] Letter of Understanding 4, Ex. E to *id.* – ECF No. 25-2 at 188.

### 3. Jurisdiction

The court has subject-matter jurisdiction under the Class Action Fairness Act, and removal was proper. 28 U.S.C. §§ 1332(d), 1441.[29] The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c)(1).[30] The court held a hearing on June 5, 2025.

## LEGAL STANDARD

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Id.* at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

---

[29] Notice of Removal – ECF No. 1.

[30] Consents – ECF Nos. 6, 9.

If the moving party meets its initial burden, then the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan*, 210 F.3d at 1103. "Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (cleaned up). If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

When ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the nonmoving party and draws all factual inferences in the nonmoving party's favor. *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3). A "district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). In other words, "whatever establishes a genuine issue of fact must both be in the district court file and set forth in the response." *Id.* at 1029; *see Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[I]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

## ANALYSIS

The plaintiff's TAC contains nine causes of action: (1) failure to pay minimum wages (Cal. Labor Code §§ 223, 1194, 1194.2, 1197 and California Industrial Welfare Commission (IWC) Wage Order § 3-4), (2) failure to pay overtime wages (Cal. Labor Code §§ 510, 1194, 1198 and IWC Wage Order § 3), (3) failure to provide meal periods (Cal. Labor Code §§ 226.7, 512, and IWC Wage Order § 11), (4) failure to permit rest breaks (Cal. Labor Code § 226.7 and IWC Wage Order § 12), (5) failure to reimburse business expenses (Cal. Labor Code §§ 2800, 2802), (6) failure

United States District Court
Northern District of California

1    to provide accurate itemized wage statements (Cal. Labor Code §§ 226), (7) failure to pay all wages

2    upon separation of employment (Cal. Labor Code §§ 201–03), (8) violation of California Business

3    and Professions Code § 17200, and (9) violation of PAGA.[31]

4        The motion turns on whether the 2024 CBA is enforceable and applies to the plaintiff's claims.

5    The following sections address the enforceability of the 2024 CBA and its applicability to the

6    plaintiff's individual, class, and PAGA claims.

7

8    **1.  Claims 1 through 8**

9        Metro contends that the court should dismiss claims one through eight because the California

10   Labor Code claims (one through seven) are subject to the CBA (requiring that the plaintiff resolve

11   them through its grievance process) and the unfair-competition claim (eight) is derivative of those

12   claims. The plaintiff counters that the 2024 CBA is unenforceable and, even if it is, it does not

13   contain a clear and unmistakable waiver and does not apply retroactively.

14       The 2024 CBA is enforceable, contains a clear and unmistakable waive of the plaintiff's right to

15   pursue California Labor Code claims in a judicial forum, and applies retroactively.

16   **1.1    The 2024 CBA is Enforceable**

17       The plaintiff contends that the 2024 CBA is unenforceable because (1) Metro has not shown

18   that Local 87 and the San Francisco Maintenance Contractors Association agreed to the 2024

19   CBA, which is unsigned and contains strikethroughs, and (2) Metro could not enforce the CBA

20   because Metro is not a signatory to it.[32] Metro counters that (1) Metro is a "Me-Too" contractor to

21   the CBA and adopted it through its conduct, (2) the language in letter of understanding 4

22   discussing the requirement that Labor Code claims be resolved by the grievance procedure is not

23   in draft form, (3) Metro received an email stating that Local 87 and the San Francisco

24

25

26

27   ───────────────
     [31] TAC, Ex. S to Notice of Removal – ECF No. 1-22 at 79–91; Mot. – ECF No. 25 at 14–15.

28   [32] Opp'n – ECF No. 26 at 12–13.

United States District Court
Northern District of California

1    Maintenance Contractors Association agreed to letter of understanding 4, and (4) even if the 2024

2    CBA is not operative, letter of understanding 4 modifies the 2020 CBA.[33]

3    "The Ninth Circuit has recognized that a party who is not a signatory to a CBA 'can adopt [a

4    labor agreement] by their conduct.'" *Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund*

5    *v. Gudgel Yancey Roofing Inc.*, No. 16-CV-04310-LHK, 2017 WL 1065289, at *5 (N.D. Cal. Mar.

6    21, 2017) (quoting *S. Cal. Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc.*, 359

7    F.3d 1127, 1131–33 (9th Cir. 2004)). "To determine whether a party has adopted a contract by its

8    conduct, the relevant inquiry is whether the party has displayed 'conduct manifesting an intention

9    to abide by the terms of the agreement.'" *Best Interiors*, 359 F.3d at 1133 (quoting *NLRB v.*

10   *Haberman Constr. Co.*, 641 F.2d 351, 356 (5th Cir. 1981) (en banc)). "Whether particular conduct

11   in a given case demonstrates the existence or adoption of an agreement is a question of fact."

12   *Gudgel Yancey Roofing*, 2017 WL 1065289, at *5 (quoting *Arco Elec. Co. v. NLRB*, 618 F.2d 698,

13   699 (10th Cir. 1980)).

14   "[C]ourts considering whether an employer has adopted a CBA by conduct 'have emphasized,

15   among other factors, the payment of union wages, the remission of union dues, the payment of

16   fringe benefit contributions, the existence of other agreements evidencing assent and the

17   submission of the employer to union jurisdiction, such as that created by grievance procedures.'"

18   *Bd. of Trs. of the Bay Area Roofers Health & Welfare Tr. Fund v. Gudgel Yancey Roofing Inc.*,

19   225 F. Supp. 3d 1106, 1112 (N.D. Cal. 2016) (quoting *Bricklayers Local 21 of Ill. Apprenticeship*

20   *& Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004)). This inquiry

21   is fact intensive and requires "a detailed analysis of the specific conduct at issue as it relates to the

22   obligations imposed under the relevant agreement or agreements." *District Council 16 N. Cal.*

23   *Health & Welfare Tr. Fund. v. Hulsey Contracting Inc.*, No. 20-cv-02863-JCS, 2023 WL

24   7563873, at *16 (N.D. Cal. Nov. 13, 2023).

25

26

27   ───────────────
     [33] Mot. – ECF No. 25 at 20; Reply – ECF No. 27 at 9–10; Emails, Ex. B to Nolan Decl. – ECF No. 27-
28   1 at 63–66.

United States District Court
Northern District of California

1      The 2024 CBA applies to the plaintiff's claims. In letter of understanding 4, the parties to the

2  CBA agreed that claims about violations of the California Labor Code must be resolved through

3  the CBA's grievance procedures. Metro's vice president of janitorial received an email (1)

4  confirming that Local 87 had agreed to the letter of understanding and (2) providing a form email

5  for the "Me-Too" contractors to notify the California Labor and Workforce Development Agency

6  of the agreement by September 30, 2024, which Metro did.[34] Metro also demonstrated its intent to

7  be bound by the CBA by paying union wages from the 2024 CBA pay schedule to its Local 87

8  employees.[35] *Bay Area Roofers*, 225 F. Supp. 3d at 1112–13 (payment of union wages and

9  benefits can show that a party is bound by a CBA).

10     Taken together, these circumstances show that the parties agreed to be bound by the 2024

11  CBA. The plaintiff has not offered evidence to the contrary, and the court finds that the parties are

12  bound by the 2024 CBA.

13     **1.2    The 2024 CBA Contains a Clear and Unmistakable Waiver**

14     The plaintiff asserts that even if the 2024 CBA is enforceable, the waiver of the right to pursue

15  claims in court is ambiguous (and therefore ineffective) because it waives "any and all violations

16  of the sections of the California Labor Code that are redressable pursuant to the Labor Code

17  Private Attorneys General Act of 2004" rather than identifying any specific section.[36] Metro

18  counters that (1) the CBA's reference to the California Labor Code and PAGA are sufficiently

19  specific because it is not a blanket waiver of all federal and state causes of action and (2) the

20  CBA's commitment to abide by the statutory requirements clearly identifies the relevant statutes.[37]

21  The waiver is clear and unmistakable.

22     An employee's right to a judicial forum for statutory claims may be waived by a CBA with a

23  provision that contains a "clear and unmistakable waiver." *Wright v. Universal Mar. Serv. Corp.*, 525

---

[34] Nolan Decl. – ECF No. 27-1 at 2 (¶ 5); Email, Ex. B to *id.* – ECF No. 27-1 at 63–66.

[35] Mot. – ECF No. 25 at 20; Reply – ECF No. 27 at 9; Nolan Decl. – ECF No. 25-1 at 6–7 (¶¶ 8–10); 2024 CBA, Ex. E to Nolan Decl. – ECF No. 25-2 at 150.

[36] Opp'n – ECF No. 26 at 15–17.

[37] Reply – ECF No. 27 at 11–12.

United States District Court
Northern District of California

U.S. 70, 79–81 (1998); *see Wawock v. CSI Elec. Contractors, Inc.*, 649 F. App'x 556, 559 (9th Cir. 2016) ("A CBA requirement to arbitrate a statutory claim must be explicitly stated."); *Miles v. Brusco Tug & Barge, Inc.*, No. 22-15588, 2023 WL 8166781 (9th Cir. Nov. 24, 2023) (a CBA that did not incorporate or mention specific statutes did not contain a clear and unmistakable waiver). "The Ninth Circuit has held that we will not interpret a collective bargaining agreement to waive an individual employee's right to litigate statutory claims unless the collective bargaining agreement waiver explicitly incorporates the statutory requirements." *Smith v. Serv. Emps. Int'l Union, Loc. 521*, No. 16-CV-02547-LHK, 2016 WL 4268713, at *8 (N.D. Cal. Aug. 14, 2016) (cleaned up) (quoting *Powell v. Anheuser-Busch Inc.*, 457 F. App'x 679, 679 (9th Cir. 2011)). "Generally, waivers are not 'clear and unmistakable' when they do not reference any statute at all or attempt to provide a blanket waiver to all federal and state causes of action." *Olea v. Teichert Pipelines, Inc.*, No. 2:21-cv-01675-RGK-PD, 2021 WL 1839683, at *5 (C.D. Cal. May 7, 2021) (collecting cases).

The parties have each identified cases supporting their positions. Primarily, the plaintiff points to *Bartlett v. All American Asphalt*, where a waiver of "the California Labor Code Sections identified in California Labor Code section 2699.5" was found not to be a clear and unmistakable waiver because it was "one step removed from their alleged incorporation in the CBA."[38] No. EDCV 20-1449 JGB (KKx), 2020 WL 6118818, at *8 (C.D. Cal. Oct. 16, 2020) (cleaned up). Metro points to *Gray v. SEIU, United Service Workers West*, where the court — relying in part on the Supreme Court's decision in *14 Penn Plaza* — determined that a waiver of "claims alleging a failure to pay overtime or alleging a violation of the federal Fair Labor Standards Act" was clear and unmistakable.[39] No. 20-cv-01980-JSW, 2020 WL 12228937, at *2–5 (N.D. Cal. Aug. 5, 2020) (cleaned up) (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009)). Although the Supreme Court was not asked in *14 Penn Plaza* to resolve whether the language was clear and unmistakable, it stated that the waiver, which named statutory acts rather than specific sections, clearly and unmistakably required the parties to arbitrate the statutory claims. 556 U.S. at 252, 260, 272–73.

---

[38] Opp'n – ECF No. 26 at 15–16.

[39] Reply – ECF No. 27 at 11–12.

1    Here, the 2024 CBA does not provide a blanket waiver of all federal or state causes of action

2    and is limited to the California Labor Code. By specifying "any and all violations of the sections

3    of the California Labor Code that are redressable pursuant to [PAGA]," the parties clearly and

4    unmistakably showed their intent to require the plaintiff to arbitrate her Labor Code claims.

5        The waivers addressed in the other cases cited by the plaintiff are distinguishable from the

6    waiver in this case because it makes more than a passing reference to a statute.[40] *Martinez v. J.*

7    *Fletcher Creamer & Son, Inc.*, No. CV 10-0968 PSG (FMOx), 2010 WL 3359372, at *4 (C.D.

8    Cal. Aug. 13, 2010) (finding that a waiver identifying no statute was not clear and unmistakable);

9    *Smith*, 2016 WL 4268713, at *9 (finding that a waiver making only "passing mention to various

10   state and federal laws" was not clear and unmistakable).

### 1.3    The 2024 CBA Applies Retroactively

11

12       The plaintiff contends that the CBA does not apply retroactively because the language is not

13   retroactive on its face.[41] Metro asserts that the arbitration provisions are retroactive because they

14   lack any temporal limitation.[42]

15       Courts have applied arbitration clauses without a temporal limitation to claims that precede the

16   plaintiff's acceptance of the terms. *See, e.g.*, *Azeveda v. Comcast Cable Commc'ns LLC*, No. 5:19-

17   CV-01225-EJD, 2019 WL 5102607, at *6 (N.D. Cal. Oct. 11, 2019) (arbitration provision applied

18   to "claims related to or arising from any aspect of the employment relationship" because it did not

19   have a temporal limitation and thus applied to disputes that accrued previously); *Trujillo v.*

20   *Gomez*, No. 14cv2483 BTM (BGS), 2015 WL 1757870, at *8 (S.D. Cal. Apr. 17, 2015)

21   (arbitration clause in distribution agreement for lighting products applied to "any claim or

22   controversy arising out of or relating to this Agreement" did not contain a temporal limitation and

23   thus applied to disputes that predated the agreements containing the arbitration clause).

24

25

26

---

[40] Opp'n – ECF No. 26 at 16–17.

27   [41] *Id.* at 18–22.

28   [42] Reply – ECF No. 27 at 12–13.

United States District Court
Northern District of California

On the other hand, courts have reached a different result when they conclude that the clauses govern future conduct, not past conduct. *Castro v. ABM Indus., Inc.*, No. 17-CV-3026-YGR, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) (where the operative language of collective bargaining agreements required binding mediation to resolve "all Covered Claims, whenever they arise," courts hold that language like this governs present or future conduct, not past conduct) (collecting cases); *see also Morse v. ServiceMaster Glob. Holdings Inc.*, No. C 10-00628 SI, 2012 WL 4755035, at *1, *4 (N.D. Cal. Oct. 4, 2012) (employment agreement required parties to use ServiceMaster's alternative-dispute resolution program "to resolve any and all work-related disputes/concerns and to mediate/arbitrate such disputes if they are not resolved"; the plaintiff had already filed his lawsuit before he signed the agreement; the dispute thus could not be subject to the alternative-dispute-resolution program).

Here, the waiver in the 2024 CBA covers "any and all violations."[43] Unlike the CBAs in *Morse* and *Castro*, this language does not contain a temporal limitation or show an intent to govern only future conduct.[44] The plaintiff points to cases with language explicitly stating that a waiver applies retroactively.[45] *Oswald v. Murray Plumbing & Heating Corp.*, 82 Cal. App. 5th 938, 944 (2022) (requiring arbitration of "any representative PAGA claims and class action claims that arise or are pending during the term of the parties' 2017–2026 Master Agreement regardless of when they were filed with any court or administrative agency" (emphasis omitted)); *Walton v. C. Overaa & Co.*, No. 24-cv-03658, 2024 WL 4495809, at *3 (N.D. Cal. Oct. 14, 2024) (requiring arbitration of "any representative PAGA claims, class and/or individual claims that arise or are pending during the term of the parties' current [CBA], regardless of when they were filed with the court or any administrative agency"); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1198–99 (C.D. Cal. 2015) (provision applied "retroactively to work performed from October 1, 2014 to September 30, 2016"); *Salgado v. Carrows Rests., Inc.*, 33 Cal. App. 5th 356, 359 (2019)

---

[43] Letter of Understanding 4, Ex. E to Nolan Decl. – ECF No. 25-2 at 188.
[44] Reply – ECF No. 27 at 12–13.
[45] Opp'n – ECF No. 26 at 18–22.

1    (requiring arbitration of "all disputes which may arise out of or be related in any way to my

2    application for employment and/or employment, including but not limited to the termination of my

3    employment and my compensation"). But that level of exactness is not required for retroactivity.

4    *See Azeveda*, 2019 WL 5102607, at *6.

5        Thus, the waiver in the 2024 CBA applies retroactively, and the court dismisses the plaintiff's

6    Labor Code claims for arbitration. The plaintiff did not dispute that her eighth claim for violations

7    of California Business and Professions Code is derivative of her Labor Code claims, and the court

8    dismisses claim eight too.

9        Because the plaintiff has waived her ability to bring California Labor Code claims in court, it is

10   unnecessary to address whether her overtime claim is preempted by the Labor Management Relations

11   Act.[46]

12

13   **2.  The Plaintiff's Class Claims**

14       Another issue is whether the plaintiff must arbitrate on an individual rather than class-wide

15   basis. "[A] party may not be compelled under the [Federal Arbitration Act] to submit to class

16   arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-*

17   *Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). The 2024 CBA is silent as to

18   class arbitration, which means that the plaintiff must arbitrate her claims individually.[47] *See*

19   *Walton*, 2024 WL 4495809, at *4.

20

21   **3.  PAGA (Claim 9)**

22       Metro asserts that the plaintiff must also arbitrate the individual portion of her PAGA claim

23   because it is subject to the 2024 CBA and that her representative portion must be severed and

24   stayed. The parties agree that the 2024 CBA's waiver of the plaintiff's representative PAGA claim

25

26

27   [46] Mot. – ECF No. 25 at 15–17; Opp'n – ECF No. 26 at 22–24; Reply – ECF No. 27 at 16–19.

28   [47] Mot. – ECF No. 25 at 21 (making this argument).

United States District Court
Northern District of California

is ineffective because she asserted the claim before § 2699.8 became effective.[48] Metro says that the savings clause in the 2024 CBA severs the ineffective PAGA waiver, allowing the individual portion of her PAGA claim to be arbitrated and the representative portion to be stayed.[49]

The plaintiff contends that Metro has waived the right to compel arbitration of the individual portion of her PAGA claim because Metro (1) filed its motion two years after the plaintiff filed her claim, (2) participated in discovery, (3) cooperated with the *Belaire-West* notice procedure, (4) moved for summary judgment based on class waivers found in four other CBAs, and (5) there was no intervening change in the law or circumstances.[50] Metro counters that it could not have moved to compel arbitration earlier than September 2024 (when the parties agreed to letter of understanding 4) and nearly all of the conduct identified by the plaintiff occurred before September 2024.

Metro has not waived its right to move to compel arbitration of the individual portion of the plaintiff's PAGA claim.

"'[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right.'" *In re Google Assistant Priv. Litig.*, No. 19-CV-04286-BLF, 2024 WL 251407, at *3 (N.D. Cal. Jan. 23, 2024) (quoting *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023)). "With respect to the first prong of this test, knowledge of an existing right to compel arbitration does not require 'a present ability to move to enforce an arbitration agreement.'" *Id.* (quoting *Hill*, 59 F.4th at 469). "With respect to the second prong, '[t]here is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions.'" *Id.* (quoting *Hill*, 59 F.4th at 471) (cleaned up). "Under Ninth Circuit precedent, 'a party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates

---

[48] *Id.* at 21–22; Opp'n – ECF No. 26 at 25–26.

[49] Mot. – ECF No. 25 at 21–23.

[50] Opp'n – ECF No. 26 at 26–28.

United States District Court
Northern District of California

1   the merits of a case for a prolonged period of time in order to take advantage of being in court.'" *Id.*

2   (cleaned up) (quoting *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023).

3       The party opposing arbitration bears the burden of establishing waiver, but that burden is not

4   "heavy." *Id.* (quoting *Armstrong*, 59 F.4th at 1014). "[T]he burden for establishing waiver of an

5   arbitration agreement is the same as the burden for establishing waiver in any other contractual

6   context." *Id.* (quoting *Armstrong*, 59 F.4th at 1014).

7       The plaintiff has not met her burden to demonstrate waiver. Here, the relevant timeframe is

8   between when the parties agreed to letter of understanding 4 on September 18, 2024, and when

9   Metro filed its motion for summary judgment on March 31, 2025. Six months is not a prolonged

10  period, and Metro could not exercise its right to arbitrate the plaintiff's claims before the parties

11  agreed to letter of understanding 4. The only action that the plaintiff points to as an example of

12  active litigation by Metro after September 18, 2024, is Metro's November 2024 discovery

13  response. While Metro served requests for productions in December 2024, it rescinded them.[51]

14  This is insufficient to meet the second prong.

15      Thus, Metro did not waive its right to compel arbitration of the individual part of the plaintiff's

16  PAGA claim. The plaintiff did not contest Metro's request to stay her representative part pending the

17  resolution of her individual part if arbitration were compelled. The court grants the stay. *See Bonilla*

18  *v. Young's Market Co., LLC*, 2025 WL 916020, at *6 (N.D. Cal. Mar. 26, 2025) (staying a

19  representative PAGA claim where "arbitration proceedings of Plaintiff's individual claim could have

20  effect on Plaintiff's representative claim").

21

22

23

24

25

26

27

28  ───────────────
    [51] Reply – ECF No. 27 at 14–16 (making these points).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

The court grants Metro's motion for summary judgement on claims one through eight and the individual portion of claim nine. The court severs the individual part of the plaintiff's PAGA claim and stays the representative part of the claim.

**IT IS SO ORDERED.**

Dated: June 10, 2025

_____
LAUREL BEELER
United States Magistrate Judge